UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SOURCING UNLIMITED, INC. d/b/a
JUMPSOURCE,

  Plaintiff,

  v.

ELEKTROTEKS, LLC, SERKAN GULER,
JOHN E. FOX, INC., HARRY BERZACK,
POLANCO INDUSTRIAL CORP., FABIO
SYRING and SETH SERVICE-
MANUTENACAO E COMERCIO DE
EQUIPAMENTOS LTDA,

  Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

Civil Action No. 20-cv-11955-ADB

**<u>MEMORANDUM AND ORDER</u>**

BURROUGHS, D.J.

  Plaintiff Sourcing Unlimited, Inc. d/b/a Jumpsource, ("Jumpsource" or "Plaintiff") asserts

several claims against the Estate of Harry Berzack ("Berzack") and John E. Fox, Inc. ("Fox")

(collectively, "Berzack and Fox" or "Defendants"); as well as Polanco Industrial Corp. ("Polanco

Corp.").[1]  Jumpsource's claims stem from an alleged scheme, carried out by Defendants and

non-parties, to sabotage and bankrupt Jumpsource.  [ECF No. 1 at 12–57 ("Compl.")].  Currently

---

[1] All other defendants listed in the case caption are no longer part of this case.  In addition,
although most of the defendants have appeared and defended against Plaintiff's claims, Polanco
Corp., never answered the complaint.  Plaintiff moved for a default judgment against Polanco
Corp., [ECF No. 68], and the Court denied Plaintiff's motion with leave to renew at a later date
when the case has been adjudicated as to all the remaining defendants, [ECF No. 74].

before the Court is Berzack and Fox's motion for summary judgment on Counts I–VI and VIII. [ECF No. 222]. For the reasons set forth below, the motion is <u>DENIED</u>.

## I.     BACKGROUND

### A.     Factual Background

The record here is replete with contested facts that bear on the claims at issue, and thus summary judgment is not appropriate. In any event, to provide context, a short summary of the relevant contested and uncontested facts identified by the parties follows. <u>See</u> [ECF No. 237-1 at 3–34].

#### a.     Parties

Plaintiff Jumpsource is a manufacturer of industrial sewing machine parts. [ECF No. 237-1 ¶ 1]. It has designed molds for creating those parts which were made and used for manufacturing in China. [<u>Id.</u> ¶¶ 1, 2].

Defendant Fox is a seller of parts for industrial sewing machines. [ECF No. 237-1 ¶ 4]. Defendant Harry Berzack was the Chief Executive of Fox. [<u>Id.</u> ¶ 5].

#### b.     Alleged Conduct

From approximately 2012 to 2016, Fox bought parts from Jumpsource. [ECF No. 237-1 ¶ 6].[2] Jumpsource generally alleges that around the time that the business relationship ended in 2016 and thereafter, Fox and Berzack "entered into a secret agreement with rogue Jumpsource employees, [Anson Fang and Jose Polanco], to purchase stolen Jumpsource products and products manufactured from stolen Jumpsource equipment and resell them in foreign and

---

[2] Overall, Fox purchased between $180,000 and $190,000 worth of parts annually, which was about five percent of its overall annual purchases. [ECF No. 237-1 ¶¶ 7, 9]. Although the parties dispute the circumstances that ended the relationship, Fox stopped buying parts from Jumpsource altogether in 2019. [<u>Id.</u> ¶ 11]; <u>see also, e.g.</u>, [<u>id.</u> ¶¶ 35, 43, 45, 47].

interstate commerce." [ECF No. 237 at 1]. Fang was a Jumpsource employee, based in China, who was responsible for overseeing parts of Jumpsource's business there. [ECF No. 237-1 ¶ 3]. Polanco was a Jumpsource salesman. [Id. ¶ 20]. The other facts underlying these claims are largely disputed.

For example, in 2015-2016, Fox sent several emails to Jumpsource complaining about order deliveries and product quality. [ECF No. 237-1 ¶¶ 27–31, 35]. The parties dispute the basis and interpretation of those complaints (i.e., whether they were the result of business failures or the alleged conspiracy), but generally agree that at least some of the issues with Jumpsource stemmed from its business operations in China, where Fang worked. See [id. ¶¶ 27–31, 35, 44].

In September 2016, Fang resigned from Jumpsource. [ECF No. 237-1 ¶¶ 6, 21, 23]. Also in 2016, Berzack, Fox's CEO, contacted Polanco and Polanco began taking product orders from Fox. [Id. ¶¶ 49–51]. The parties dispute whether (1) these interactions occurred before or after Polanco and Fang left Jumpsource, [id. ¶ 49], (2) Berzack knew Polanco worked for Jumpsource, [id. ¶ 75], (3) Berzack knew that Polanco was using Jumpsource's molds and parts, [id. ¶¶ 50–52, 55, 63–64], and (4) the parts Polanco shipped were in fact from Jumpsource's molds, [id. ¶ 68]. Though Polanco sourced the products that he got for Fox from Fang, and payments from Fox were wired to an entity chosen by Fang, [id. ¶¶ 58–59], the parties dispute whether Berzack knew Fang, [id. ¶ 60].

### c.    State Court Action

In a separate action brought in Massachusetts state court in 2016 (the "State Action"), Jumpsource sued Polanco in his individual capacity and an individual named Michael Pierce, who was allegedly also involved in the general scheme underlying this case. [ECF No. 223 at

10; ECF No. 237-4]. There, the jury considered, as most relevant here, whether Polanco (1) interfered with a business relationship between Jumpsource and Fox, (2) committed an unfair or deceptive act or practice in violation of Mass. Gen. Laws. Ch. 93A, (3) converted Jumpsource's parts, and (4) engaged in a civil conspiracy with Fang and Pierce to breach a duty owed to Jumpsource. See generally [ECF No. 237-4]. The jury found that Polanco interfered with Jumpsource and Fox's business relationship, but that he did not "intentionally persuade Fox . . . not to continue [the] relationship between Jumpsource and Fox," [id. at 1–2], and found against Polanco on all other claims identified above, [id. at 4–5 (93A claim), 7–8 (conversion claim), 10–11 (civil conspiracy claim)].

### B.   Procedural Background

Jumpsource originally filed suit in the Essex County Superior Court on September 28, 2020. [Compl. at 57]. Fox and Berzack removed the case to this Court on October 30, 2020. [Compl. at 1–3]. Jumpsource's complaint asserted the following claims against Fox and/or Berzack: (1) Racketeering in violation of the federal civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count I), [Compl. ¶¶ 194–220]; (2) use of income derived from a pattern of racketeering activity, 18 U.S.C. § 1962(a) (Count II), [id. ¶¶ 221–233]; (3) RICO conspiracy, 18 U.S.C. § 1962(d) (Count III), [id. ¶¶ 234–244]; (4) conspiracy to commit a business tort (Count IV), [id. ¶¶ 245–49]; (5) conversion (Count V), [id. ¶¶ 250–253]; (6) violation of Chapter 93A (Count VI), [id. ¶¶ 254–269]; and (7) breach of contract and the covenant of good faith and fair dealing against Fox (Count VIII), [id. ¶¶ 274–281].

In November 2020, Berzack and Fox moved to dismiss all of these claims pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 8]. On July 8, 2021, the Court denied the

motion in part and granted it in part.  [ECF No. 27].  The surviving claims were Counts I–VI and

Count VIII.  See generally [id.].

On May 24, 2022, Fox and Berzack moved for summary judgment on all remaining

claims.  [ECF No. 222].  Plaintiff opposed on June 28, 2023, [ECF No. 237], and included in its

opposition a response to the narrative of facts in Fox and Berzack's memorandum in support of

their motion, [ECF Nos. 223 (Fox and Berzack memorandum); ECF No. 237-1 (Plaintiff's

response to Fox and Berzack's narrative facts)].

## II.       LEGAL STANDARD[3]

Summary judgment is appropriate where the moving party can show that "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor

of either party.'"  Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (alteration in

original) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).  "A fact is material

if its resolution might affect the outcome of the case under the controlling law."  Cochran v.

---

[3] Local Rule 56.1 provides that "[m]otions for summary judgment shall include a concise
statement of the material facts of record as to which the moving party contends there is no
genuine issue to be tried, with page references to affidavits, depositions and other
documentation," and that "[f]ailure to include such a statement constitutes grounds for denial of
the motion.  L.R. 56.1.  Fox and Berzack did not file the required statement, and Plaintiff asserts
that their motion should be denied on this basis alone.  [ECF No. 237-1 at 1–2].  "'District courts
enjoy broad latitude' in adopting and administering [] local rules," NEPSK, Inc. v. Town of
Houlton, 283 F.3d 1, 6 (1st Cir. 2002) (quoting Air Line Pilots Ass'n v. Precision Valley
Aviation, Inc., 26 F.3d 220, 224 (1st Cir. 1994)); see also Ramsdell v. Bowles, 64 F.3d 5, 7 (1st
Cir. 1995) (noting district court's "great leeway in the application and enforcement of its local
rules"), and can exercise discretion to consider a motion on the merits despite a party's failure to
comply with the local rules, see City of Marlborough v. WeCare Env't, LLC, 109 F. Supp. 3d
329, 331 n.1 (D. Mass. 2015).  The Court will exercise its discretion here and consider Fox and
Berzack's motion on the merits, in part because Plaintiff has provided a summary of the facts in
Fox and Berzack's motion that are contested and uncontested.  [ECF No. 223 at 2–10; ECF No.
237-1 at 3–34].

Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted).  Thus, "[a] genuine issue

exists as to such a fact if there is evidence from which a reasonable trier could decide the fact

either way."  Id.  "The moving party bears the initial burden of asserting the absence of a genuine

issue of material fact and 'support[ing] that assertion by affidavits, admissions, or other materials

of evidentiary quality.'"  McFee v. Lund, No. 18-cv-11158, 2021 WL 5310755, at *3 (D. Mass.

Nov. 15, 2021) (alteration in original) (quoting Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19

(1st Cir. 2003)).

> To succeed in showing that there is no genuine dispute of material fact, the moving party must direct [the court] to specific evidence in the record that would be admissible at trial.  That is, it must "affirmatively produce evidence that negates an essential element of the non-moving party's claim," or, using "evidentiary materials already on file . . . demonstrate that the nonmoving party will be unable to carry its burden of persuasion at trial."

Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (second alteration in

original) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).

When reviewing the record, the Court "must take the evidence in the light most flattering

to the [non-moving party], indulging all reasonable inferences in that party's favor."  Cochran,

328 F.3d at 6 (citation omitted).  The First Circuit has noted that this review "is favorable to the

nonmoving party, but it does not give him a free pass to trial."  Hannon v. Beard, 645 F.3d 45, 48

(1st Cir. 2011).  "Once the moving party avers the absence of genuine issues of material fact, the

nonmovant must show that a factual dispute does exist, but summary judgment cannot be

defeated by relying on improbable inferences, conclusory allegations, or rank speculation."

Fontanez-Nuñez v. Janssen Ortho LLC, 447 F.3d 50, 54–55 (1st Cir. 2006) (citation omitted).

"The factual conflicts upon which he relies must [also] be both genuine and material."  Gomez v.

Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012).  Further, "[t]he mere existence

of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## III.      DISCUSSION

### A.      Preclusion

Fox and Berzack first argue that Plaintiff's claims are barred by the doctrine of res judicata.  [ECF No. 223 at 10–13].  "The doctrine of res judicata may properly be asserted as a defense on a motion for summary judgment."  Miles v. Aetna Cas. & Sur. Co., 589 N.E.2d 314, 316 (Mass. 1992).  "Res judicata" is a broad term that refers to the concepts of both claim preclusion and issue preclusion.  See Taylor v. Sturgell, 553 U.S. 880, 892 (2008); Kobrin v. Bd. of Reg. in Med., 832 N.E.2d 628, 634 (Mass. 2005) (citing Heacock v. Heacock, 520 N.E.2d 151, 152 n.2 (Mass. 1988)).

> Claim preclusion is based on the idea that the precluded litigant had the opportunity and incentive to fully litigate the claim in an earlier action, so that all matters that were or could have been adjudicated in the earlier action on the claim are considered to have been finally settled by the first judgment.  In contrast, issue preclusion does not reach issues unless they were actually litigated and decided in the first litigation, however, it bars relitigation of those issues even in the context of a suit based on an entirely different claim.

In re Sonus Networks, Inc., S'holder Derivative Litig., 499 F.3d 47, 56–57 (1st Cir. 2007) (internal citations omitted).

Where the relevant final judgment comes from a state court proceeding, federal courts apply the state law of res judicata.  See Cruz v. Melecio, 204 F.3d 14, 18 (1st Cir. 2000) ("[S]tate law, with all its wrinkles, applies in deciding the res judicata effect of a state court judgment in a federal court.").

Under Massachusetts law, "[t]he doctrine of claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that

were or should have been adjudicated in the action." Heacock, 520 N.E.2d at 152–53.  To

establish claim preclusion, a party must demonstrate "(1) the identity or privity of the parties to

the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on

the merits." Kobrin, 832 N.E.2d at 634 (quoting DaLuz v. Dep't of Corr., 746 N.E.2d 501, 505

(Mass. 2001)).

> Issue preclusion, on the other hand, applies when
>
> (1) there was a final judgment on the merits in the prior adjudication; (2) the party
> against whom preclusion is asserted was a party (or in privity with a party) to the
> prior adjudication; [] (3) the issue in the prior adjudication was identical to the issue
> in the current adjudication[, and (4)] the issue decided in the prior adjudication must
> have been essential to the earlier judgment.

Kobrin, 832 N.E.2d at 634 (internal citations omitted).

The Court finds that neither claim nor issue preclusion applies here.  First, as is relevant

to both claim and issue preclusion, neither Fox nor Berzack were parties to the State Action, and

thus the jury did not consider whether either defendant, for example, engaged in a civil

conspiracy, converted Jumpsource's products, or violated Mass. Gen. Laws ch. 93A.

Second, regarding claim preclusion specifically, there are claims here that were not

considered in the State Action (e.g. RICO claims, breach of contract by Fox), and even where the

claims are similar (e.g. civil conspiracy, conversion, violation of Chapter 93A), this Court

previously held in denying a motion to stay that although "[t]he factual allegations that are at the

core of Jumpsource's claims here overlap with many of the allegations in the State Action,"

Defendants here "are each defending their own conduct as part of an alleged conspiracy and

furthering their own interests."  [ECF No. 72 at 3].  Moreover, this case was properly removed

from state court to federal court by the present Defendants.  See [Compl. at 1–3].  Thus,

Defendants did not have the "opportunity . . . to fully litigate the claim in" the State Action such

that "all matters that were or could have been adjudicated . . . are considered to have been finally settled by the first judgment."  See Sonus Networks, 499 F.3d at 56–57.  Accordingly, the Court finds claim preclusion does not apply here.

Third, regarding issue preclusion, Fox and Berzack argue that the identical issue here is the alleged "interfere[ence] with the Jumpsource/Fox relationship."  [ECF No. 223 at 12].  As an initial matter, this Court has already dismissed Plaintiff's claim that Fox and Berzack interfered with Jumpsource's advantageous business relationships.  [ECF No. 27 at 29–30].  In any event, whether Polanco interfered with the Jumpsource/Fox relationship does not speak to whether the Defendants here violated the RICO statute, engaged in a civil conspiracy, converted Jumpsource's tangible goods, violated Chapter 93A, or breached a contract.  Simply put, the issues in the State Action are not identical to the issues here, and thus they were not "actually litigated and decided in the first litigation."  See Sonus Networks, 499 F.3d at 56–57.  The Court therefore finds that issue preclusion does not apply here.

## B.  Count I: Pattern of Racketeering Activity, 18 U.S.C. § 1962(c)

"To state a claim under section 1962(c), a plaintiff must allege each of the four elements required by the statute: (1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity."  Soto-Negrón v. Taber Partners I, 339 F.3d 35, 38 (1st Cir. 2003) (quoting N. Bridge Assocs., Inc. v. Boldt, 274 F.3d 38, 42 (1st Cir. 2001)).

As relevant here, to establish a pattern of racketeering activity, a plaintiff must show at least two predicate acts of racketeering activity, and must demonstrate that "the predicates are related, *and* that they amount to or pose a threat of continued criminal activity."  N. Bridge Assocs., Inc., 274 F.3d at 42 (emphasis in original) (internal quotations and citation omitted).  As the First Circuit explained,

9

> [a]cts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.  Continuity requires that the related predicates amount to or pose a threat of continued criminal activity.  Plaintiffs may satisfy the continuity requirement either by evidence of a series of related predicates extending over a substantial period of time, or by evidence that the acts include a specific threat of repetition extending indefinitely into the future or form part of an ongoing entity's regular way of doing business . . . .

Soto-Negrón, 339 F.3d at 38 (internal quotation marks and citations omitted).  As is also relevant here, a violation of the National Stolen Property Act ("NSPA"), 18 U.S.C. §§ 2314 and 2315, is a predicate act that can trigger the RICO statute.  18 U.S.C. § 1961(1) (listing 18 U.S.C. §§ 2314 and 2315 as racketeering activity); Republic of Turkey v. OKS Partners, 797 F. Supp. 64, 67 (D. Mass. 1992) (finding predicate act requirement satisfied when plaintiff alleged that defendants had violated the NSPA by purchasing stolen coins in three separate transaction and then selling two coins).

> Jumpsource alleges that
>
> Fox Defendants entered into secret transactions with Plaintiff's employees, Polanco and Fang, to purchase Jumpsource's specially made sewing machine replacement parts directly from Polanco and Fang.  This happened while Polanco and Fang were still employed by Jumpsource, and that, pursuant to instructions received by Polanco, Berzack and Fox wired money over $720,000 to Fang and Polanco for repeated purchases of those parts, over many years[,] . . . [and that] Plaintiff has set forth sufficient facts, resolving all inferences in Jumpsource's favor, to show that the Fox Defendants repeatedly violated the NSPA since 2016 when it bought and resold in interstate commerce the parts it purchased from Fang and Polanco.  They did so knowingly and it became a part of Fang, Polanco and the Fox Defendants' way of doing business.

[ECF No. 237 at 14–17].

Fox and Berzack argue that there was no pattern of racketeering activity because Fox and Berzack did not conspire to steal or sell Jumpsources' molds.  Rather, "Fox cancelled orders it had with Jumpsource" because it "could not deliver quality parts on time.  Berzack made this very clear to Jumpsource in a series of emails . . . ."  [ECF No. 223 at 15].  They also aver that

"Polanco testified quite clearly at the state court trial that he did not supply parts to Fox made from Jumpsource molds, as these were not the parts Berzack wanted." [Id.].  Finally, Fox and Berzack contend that the decision to stop buying from Jumpsource was not part of a criminal scheme, but was instead a "commonsense business decision based upon a supplier's failure to perform." [Id.].[4]

Because several facts relevant to these arguments are disputed, including the reasons why Fox cancelled the orders it had with Jumpsource, see [ECF No. 237-1 ¶¶ 27–31, 35, 43–45, 47], and whether Fox purchased products made from Jumpsource's molds, see [id. ¶ 68], the Court declines to grant summary judgment.  See Fed. R. Civ. P. 56(a).

Fox and Berzack also argue that there was no criminal enterprise.  An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  An enterprise based on an "association-in-fact" requires "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  Boyle v. United States, 556 U.S. 938, 946 (2009).  "'Common purpose' does not mean commonality of motive, it means coordinated activity in pursuit of a common objective."  In re Lupron Mktg. & Sales Pracs. Litig., 295 F. Supp. 2d 148, 173 (D. Mass. 2003).

---

[4] Fox and Berzack claim that because the alleged acts "sound in fraud," Plaintiffs must assert all elements of the RICO claim according to the heightened Federal Rule of Civil Procedure 9(b) standard, and that the record is devoid of specific "facts that Fox and Berzack knew Fang 'stole' the molds from Plaintiff."  [ECF No. 223 at 15].  The Court has already rejected this argument and does so again here.  [ECF No. 27 at 16].

Fox and Berzack aver that "to preserve his business," Berzack "started buying [] parts through a different vendor in 2016.  There is no evidence that he – or anyone else – knew the provenance of those parts.  Nor . . . [did he] know the identity of Anson Fang, or the origin of the parts he ordered."  [ECF No. 223 at 16].

Plaintiff, however, disputes whether Berzack knew Fang and/or the origin of the parts, see [ECF No. 237-1 ¶¶ 50–52, 55, 63–64, 75], and whether Fox purchased products made from Jumpsource's molds, see [id. ¶ 68].  Thus, the Court declines to grant summary judgment on this claim.  See Fed. R. Civ. P. 56(a).

### C.      Count II: Use of Income, 18 U.S.C. § 1962(a)

To be liable, section 1962(a) requires a person to receive income from a pattern of racketeering activity and "to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in . . . interstate . . . commerce."

Sys. Mgmt., Inc. v. Loiselle, 91 F. Supp. 2d 401, 415 (D. Mass. 2000) (quoting 18 U.S.C.

§ 1962(a)).  In addition, a plaintiff must show that it was harmed by "the use or investment of income derived from [the] pattern of racketeering activity."  Compagnie De Reassurance D'lle de France v. New Eng. Reinsurance Corp., 57 F.3d 56, 91–92 (1st Cir. 1995).

Fox and Berzack argue that they "did not obtain any 'racketeering income' from anyone," "used money from [Berzack's] own company to pay for any parts" they purchased, and that "the record is completely devoid of any ill-gotten gains obtained by Fox and Berzack used to harm Plaintiff."  [ECF No. 223 at 16–17 (emphasis removed)].  Their position is that "[t]he undisputed record shows that Fox and Berzack are in no way factually or legally responsible for what might be viewed as unlawful coordinate acts of Plaintiff's ex-employees, and any income derived therefrom."  [Id. at 17].

Several facts relevant to these arguments are disputed, including whether (1) Polanco and Fang were ex-employees of Jumpsource when they began selling parts to Fox, see [ECF No. 237-1 ¶¶ 22–23, 49–52, 55, 63–64, 75], and (2) Berzack knew Fang, [id. ¶ 60].  Thus, the Court declines to grant summary judgment on this claim.  See Fed. R. Civ. P. 56(a).

###     D.        Count III: RICO Conspiracy, 18 U.S.C. § 1962(d)

To state a claim for conspiracy pursuant to 18 U.S.C. § 1962(d), a plaintiff must allege the elements of an underlying RICO claim, "plus allegations that each RICO co-conspirator knowingly joined the conspiracy and involved himself or herself, directly or indirectly, in the commission of at least two predicate offenses."  Dickey v. Kennedy, 583 F. Supp. 2d 183, 188 (D. Mass. 2008) (citations and internal quotation marks omitted).

Fox and Berzack again argue that "[t]he record is completely devoid of any unlawful 'enterprise.'"  [ECF No. 223 at 17] (emphasis omitted).  Instead, they aver that (1) "Berzack bought new and better parts from a former employee of Jumpsource, and from a source he did not know," (2) "[h]e did not know and did not care where those parts came from," (3) "[h]e wanted and required 'Original Equipment Manufacturer' or OEM parts, not cheap knock-offs like those produced by Jumpsource," (4) "[h]e never knew who Anson Fang was or that he had worked for Jumpsource," and (5) there is no "evidence that Berzack knew Polanco had worked for Jumpsource."  [Id.].

Several facts relevant to these arguments are disputed, including whether (1) Berzack knew Fang and/or the origin of the parts, see [ECF No. 237-1 ¶¶ 50–52, 55, 60, 63–64, 75], (2) Berzack knew Polanco worked for Jumpsource, [id. ¶ 75], and (3) Fox purchased products made from Jumpsource's molds, see [id. ¶ 68].  Thus, the Court declines to grant summary judgment on this claim.  See Fed. R. Civ. P. 56(a).

13

### E.    Count IV: Civil Conspiracy

In Massachusetts, civil conspiracy may take the form of "concerted action," whereby liability is imposed on one individual for the tort of another.  Because it is vicarious liability, this type of civil conspiracy requires an underlying tort [and t]he conspiracy consists in agreeing to, or assisting in, this underlying tort.  To prove a "concerted action" conspiracy, a plaintiff must show that defendants either (1) acted in concert with or pursuant to a common design with the tortfeasor or (2) gave substantial assistance to the tortfeasor's conduct.

Thomas v. Harrington, 909 F.3d 483, 490 (1st Cir. 2018) (alterations in original) (internal quotation marks and citations omitted).

"Civil conspiracy under Massachusetts law does not require an express agreement."  Van Eperen v. Mass. Mut. Life Ins., Co., No. 3:14-cv-13008, 2017 WL 9249439, at *17 (D. Mass. Feb. 28, 2017) (citing Fiorillo v. Winiker, 85 F. Supp. 3d 565, 576 (D. Mass. 2015)), R. & R. adopted, No. 14-cv-13008, 2017 WL 2362004 (D. Mass. May 31, 2017).  A plaintiff need only show that a defendant provided substantial assistance "with the knowledge that such assistance [was] contributing to a common tortious plan."  Koufos v. U.S. Bank, N.A., 939 F. Supp. 2d 40, 51 (D. Mass. 2013).

Fox and Berzack argue that (1) "[t]here is no evidence that [they] inflicted an underlying business tort upon Plaintiff," (2) "[t]he factual record is completely devoid of any evidence that [they] knowingly – or inadvertently – acted in concert with Plaintiff's former employees to cause intentional or other harm to the Plaintiff," and (3) [they] "did not steal molds belonging to Plaintiff; and did not sell parts made from Jumpsource molds 'belonging' to Jumpsource."  [ECF No. 223 at 17–18].

Several facts relevant to these arguments are disputed, including whether (1) Polanco and Fang were ex-employees of Jumpsource when they began selling parts to Fox, see [ECF No. 237-1 ¶¶ 22–23, 49–52, 55, 63–64, 75], (2) Berzack knew Fang and/or the origin of the parts, see

14

[id. ¶¶ 50–52, 55, 60, 63–64, 75], (3) Berzack knew Polanco worked for Jumpsource, [id. ¶ 75], and (4) Fox purchased products made from Jumpsource's molds, see [id. ¶ 68].  Thus, the Court declines to grant summary judgment on this claim.  See Fed. R. Civ. P. 56(a).

### F.      Count V: Conversion (Tangible Assets)

To state a claim for conversion, a plaintiff must show that "(1) the defendant intentionally and wrongfully exercised control over property owned or possessed by the plaintiff, (2) the plaintiff was damaged and (3) if the defendant legitimately gained possession under a good-faith claim of right, the plaintiff's demand for the return of the property was refused."  Children's Hosp. Corp. v. Cakir, 183 F. Supp. 3d 242, 245 (D. Mass. 2016) (citing Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 4 F.3d 90, 95 (1st Cir. 1993)).

Fox and Berzack argue that (1) "[t]he undisputed evidence is that [they] were purchasing parts legitimately after the relationship with Jumpsource ended," (2) "there is no evidence these parts came from Jumpsource's faulty molds," and (3) "Plaintiff's principals testified that they never saw any of the parts which Fox and Berzack purchased through Polanco."  [ECF No. 223 at 18].

Several facts relevant to these arguments are disputed, including whether (1) Polanco and Fang were ex-employees of Jumpsource when they began selling parts to Fox, see [ECF No. 237-1 ¶¶ 22–23, 49–52, 55, 63–64, 75], and (2) Fox purchased products made from Jumpsource's molds, see [id. ¶ 68].  Thus, the Court declines to grant summary judgment on this claim. See Fed. R. Civ. P. 56(a).

### G.      Count VI: Massachusetts General Laws Chapter 93A

Chapter 93A proscribes all unfair methods of competition and unfair or deceptive acts or practices [made] in the conduct of any trade or commerce.  A practice or act is unfair under Chapter 93A if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical,

oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people. . . .

CardiAQ Valve Techs., Inc. v. Neovasc Inc., No. 14-cv-12405, 2016 WL 1642573, at *5 (D. Mass. Apr. 25, 2016) (alterations in original) (citations and internal quotation marks omitted).

Fox and Berzack argue that the 93A claim fails for the same reasons as the civil conspiracy claim, namely because (1) "[t]here is no evidence that Fox and Berzack inflicted an underlying business tort upon Plaintiff," (2) "[t]he factual record is completely devoid of any evidence that Fox and Berzack knowingly – or inadvertently – acted in concert with Plaintiff's former employees to cause intentional or other harm to the Plaintiff," and (3) "Fox and Berzack did not steal molds belonging to Plaintiff; and did not sell parts made from Jumpsource molds 'belonging' to Jumpsource."  [ECF No. 223 at 17–18].  As explained above, several facts relevant to these arguments are disputed, and thus, the Court declines to grant summary judgment on this claim.  See Fed. R. Civ. P. 56(a).

## H.    Count VIII: Breach of Contract (Fox Only)

In order to state a viable breach of contract claim under Massachusetts law, plaintiffs must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiffs sustained damages as a result of the breach. Plaintiffs also must do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with "substantial certainty," the specific contractual promise the defendant failed to keep.

Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007) (citations omitted).

Fox argues that the contract at issue, [ECF No. 223-19], "implies that the Plaintiff could and would produce and supply to Fox quality parts in a timely manner.  This it could not do.  An

antecedent breach is legal justification for getting out of a contract. That is precisely what occurred in this case." [ECF No. 223 at 19].

The parties disagree about why Jumpsource was unable to provide Fox parts on time. See [ECF No. 237-1 ¶¶ 27–31, 35, 43–45, 47]. This material factual dispute precludes summary judgment. See Fed. R. Civ. P. 56(a).

## I.    Laches

"Defendants have the burden of proving laches." Copy Cop, Inc. v. Task Printing, Inc., 908 F.Supp. 37, 47 (D. Mass. 1995) (quoting Lotus Dev. Corp. v. Paperback Software Int'l, 740 F. Supp. 37, 82 (D. Mass. 1990)). "To prevail, 'defendants must prove by a preponderance of the evidence (1) that plaintiff inexcusably and unreasonably delayed in bringing this action; and (2) that the delay has prejudiced defendants.'" Id. (quoting Lotus Dev. Corp., 740 F. Supp. at 82). "[L]aches applies only where the plaintiff knew or should have known of the infringing conduct." Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Crédito Oriental, 698 F.3d 9, 21 (1st Cir. 2012) (citing Valmor Prods. Co. v. Standard Prods. Corp., 464 F.2d 200, 204 (1st Cir. 1972).

Fox and Berzack argue that Plaintiff's claims are barred by the laches doctrine because Jumpsource knew about Fox's alleged conduct for nearly four years before bringing suit. [ECF No. 223 at 19–20]. Plaintiff responds that it did not delay in bringing suit, but instead raised its issues with Fox, who in turn continued to purchase parts from Polanco and Fang, all of whom took active steps to conceal their actions. [ECF No. 237 at 25]. Plaintiff also argues that Fox and Berzack were not disadvantaged by any delay in filing suit, and that they actually benefitted during that time by profiting off of Jumpsource's parts. [Id. at 25–26].

The Court finds that, in light of the many factual disputes identified above, Fox and Berzack have failed to establish that there are no triable issues of fact as to whether Jumpsource excusably delayed filing this lawsuit pending a good faith effort to resolve the dispute with Fox and Berzack, and then whether Fox and Berzack were prejudiced by any delay.  Thus, the Court declines to grant summary judgment on this defense.  <u>See</u> Fed. R. Civ. P. 56(a).

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment, [ECF No. 222], is <u>DENIED</u>.

**SO ORDERED.**

September 18, 2023                                   /s/ Allison D. Burroughs
                                                    ALLISON D. BURROUGHS
                                                    U.S. DISTRICT JUDGE